IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JIMMY W. WAGERS,)
)
      Plaintiff,)
)
v.) CIVIL ACTION NO. CV204-180
)
JO ANNE B. BARNHART,)
Commissioner of Social Security,)
)
      Defendant.)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport, ("the ALJ" or "ALJ Davenport") denying his claim for a period of disability and Disability Insurance Benefits. Plaintiff urges the Court to remand this case because the ALJ's decision is not supported by substantial evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff filed an application for a period of disability, Disability Insurance Benefits, and Supplemental Income Disability Benefits on March 22, 2002, alleging that he became disabled on November 17, 1999, due to neck and back pain with numbness in his hands and fingers. (Tr. at 17, 19.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On March 7, 2003, ALJ Davenport held a hearing at which Plaintiff appeared and testified. Plaintiff was represented by counsel at that hearing. ALJ Davenport found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 26.) The Appeals Council denied Plaintiff's request for review of the ALJ's

AO 72A
(Rev. 8/82)

decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 4.)

Plaintiff, born on April 27, 1951, was 52 years old when ALJ Davenport issued his decision. He has a high school education. (Tr. at 18.) His past relevant work experience includes work as a rigger. (Id.)

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed.2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth

step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (Tr. at 26.) At step two, ALJ Davenport determined that Plaintiff had a combination of impairments considered severe within the Act. (Id.) However, the ALJ ascertained that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id.) At the next step, ALJ Davenport determined that claimant retained the residual functional capacity ("RFC") for light exertional work with a sit/stand option. (Tr. at 24.) The ALJ decided that Plaintiff's RFC precluded him from the performance of his past relevant work. (Id.) However, ALJ Davenport determined that Plaintiff could perform other work that exists in significant numbers in the national economy. (Tr. at 16.) The ALJ concluded that Plaintiff was not disabled at any time through the date of this decision. (Id.)

## ISSUES PRESENTED

Whether the ALJ erred by:

I. Concluding that a sufficient number of jobs existed in the national economy for Plaintiff to perform despite an alleged conflict between the vocational expert's testimony and both the Dictionary of Occupational Titles and the Medical-Vocational Guidelines;

II. Determining that Plaintiff's RFC allowed him to perform light exertional work with a sit/stand option; and

3

III.   Failing to properly evaluate the credibility of Plaintiff's subjective complaints concerning pain and numbness.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

4

## DISCUSSION AND CITATION OF AUTHORITY

I. **ALJ Davenport's finding that jobs existed in the national economy for the Plaintiff to perform is supported by substantial evidence.**

Plaintiff generally asserts that the Commissioner did not meet her burden of establishing that there is work in the national economy for him to perform. Plaintiff avers that the ALJ did not properly consider the Vocational Expert's ("VE") testimony. Plaintiff contends that the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT") and the Medical-Vocational Guidelines ("Grids"). Plaintiff asserts that there is no work in the national economy that he can perform and he should be found disabled.

Defendant contends that the Commissioner satisfied her burden at step five. Defendant asserts that the VE's testimony provides substantial evidence at step five. Defendant avers that there are sufficient jobs in the national economy for Plaintiff to perform without the dispatcher position, which conflicts with the VE's testimony and the DOT. Defendant also asserts that Plaintiff incorrectly interprets the use of the Grids and that Rule 201.12 is inapplicable.

Generally, after a claimant's RFC and ability (or inability) to return to his past relevant work are determined, "the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). Nonetheless, when a claimant is "'unable to perform a full range of work at a given residual level or when a claimant has non-exertional impairments that significantly limit basic work skills[,] exclusive reliance on the grids is not appropriate.'" Id. (quoting Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985)

5

(emphasis in original)). If either of these conditions is present, the ALJ is required to consult a VE. Id.

Through the use of VE testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)). When determining jobs that a plaintiff may perform, the Social Security Administration (SSA) takes "administrative notice of reliable job information available from various governmental and other publications, such as the DOT." Jones, 190 F.3d at 1230 (citing 20 C.F.R. § 404.1566(d)(1)). However, the DOT itself is not comprehensive and "'is not the sole source of admissible information concerning jobs.'" Id. (citing Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994)). The VE provides valuable supplementation to the DOT data, including local information detailing regional jobs. Id. When a conflict occurs between a VE and the DOT, the VE's testimony "trumps" the DOT. Id. at 1229-30.

ALJ Davenport determined that Plaintiff's RFC precluded the performance of his past work. The ALJ found that Plaintiff's non-exertional limitations impeded his ability to "perform all or substantially all of the requirements of light work." (Id.) As a result, the ALJ consulted a VE to determine the number of jobs in the national economy that Plaintiff could perform according to his RFC, age, education, and past relevant work experience. The ALJ posed a hypothetical question correctly encompassing the aforementioned qualities.

6

The VE testified that Plaintiff could perform two sedentary jobs: (1) surveillance system monitor, a specific vocational preparation ("SVP") of 2, unskilled position and (2) a dispatcher, a SVP of 3, semi-skilled position.[1] (Tr. at 25, 63.) Relying on the VE's testimony, the ALJ determined that Plaintiff could not perform light vocational work, but could perform jobs at the sedentary exertional level. The VE also testified that these jobs were consistent with the DOT description. (Tr. at 26.) The ALJ concluded that there was no conflict between the VE's testimony and the DOT. (Id.)

ALJ Davenport appropriately consulted a VE because the ALJ determined that Plaintiff's non-exertional limitations would impede his basic work skills. See Philips, 357 F.3d at 1242. Exclusive reliance upon the Grids in Plaintiff's case would have been inappropriate. See id. During the VE's testimony, the ALJ appropriately asked whether a conflict existed between the DOT description and his analysis. (Tr. at 26, 63-64.) When the VE answered that no conflict existed, the ALJ could rely solely upon the VE's assessment and determinations. See Jones, 190 F.3d at 1230. Any conflict between the VE's testimony regarding work and the DOT's classification is resolved by the VE's testimony. Id. The ALJ qualified the VE as an expert without objection from Plaintiff's Counsel. (Tr. at 60.) In light of Social Security Regulations, the VE considered the Plaintiff's various exertional and non-exertional restrictions, as well as his, age, education and prior work history in making his determinations. (Tr. at 62-63.) Further, the VE also provided two positions that clearly fall within the Plaintiff's skill level and exist in significant numbers within the national economy. (Tr. at 25, 63.) Thus, ALJ Davenport applied the appropriate legal standard. Substantial evidence supports his determination that the

---

[1] The record indicates that the VE suggested a third job at the semi-skilled occupation. However, ALJ Davenport granted Plaintiff's motion to strike this occupation. (Tr. at 66.)

7

Commissioner satisfied her burden of demonstrating that a sufficient number of jobs exist in the national economy for plaintiff to perform.

II. **ALJ Davenport's decision regarding Plaintiff's RFC is supported by substantial evidence.**

Plaintiff contends that the ALJ's determination that Plaintiff can perform light work is unsupported. Plaintiff asserts that he is unable to perform the six hours of standing and walking necessary to conduct light work. Plaintiff alleges that the ALJ relied upon outdated medical assessments. In his Reply Brief, Plaintiff contends that a sit/stand option does not allow one to conclude that he could perform six hours of standing required in "the vast majority of light work." (Doc. No. 13, p. 4.) Plaintiff asserts that he is limited to sedentary work and the Grids direct a finding that he is disabled.

Defendant generally contends that the ALJ properly decided Plaintiff's RFC. Defendant avers that Plaintiff's argument mistakes the ALJ's factual determination concerning Plaintiff's ability to stand and walk. Defendant contends that the ALJ's conclusion that Plaintiff required a sit/stand option satisfies Plaintiff's assessment of his standing capabilities.

The fourth step of the sequential analysis requires the ALJ to assess the Plaintiff's RFC and the claimant's ability to return to his past relevant work. Philips, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). A plaintiff's RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Id. (citing 20 C.F.R. § 404.1545(a)). The ALJ's RFC assessment shall be based "on all the relevant medical and other evidence" when a plaintiff does not meet a listed impairment Id. (citing 20 C.F.R. § 404.1520(e)). A treating physician's opinion is entitled to substantial

8

weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical opinion is conclusory, unsupported by objective medical findings, or not supported by evidence from the record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F.2d at 583. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

In the instant case, ALJ Davenport determined that "the totality of the probative evidence" indicated that Plaintiff retained a RFC allowing him to perform light exertional work with a sit/stand option. (Tr. at 24.) According to the SSA, light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2005). The ALJ significantly limited Plaintiff's ability by stating that he can only occasionally: balance, bend, climb, crawl, crouch and stoop; use both arms and hands for reaching, handling, feeling, and fine gross manipulation; use both legs to push/pull, and should not work in jobs requiring excessive turning of the head. (Tr. at 24.)

9

ALJ Davenport relied heavily upon a State Agency Disability Determination, a consultative examination with Dr. Dallas Dan von Hessler, evaluations conducted in 2000 by Dr. Calvin Hudson and Dr. George Taylor, and a 2001 evaluation from Dr. Charles Harden. The State Agency Disability Determination found that Plaintiff retained the RFC to perform light exertional work with some postural limitations. (Tr. at 24, 223.) Dr. Hudson's examination in 2000 provided that Plaintiff could return to work with limitations. (Tr. at 21, 274.) Dr. Hudson opined that these limitations would be temporary, and he believed that Plaintiff's injury was not severe enough to immediately require surgery. (Tr. at 273.) Further, Plaintiff's consultative examination in April of 2003 by Dr. Dan von Hessler indicates that Plaintiff could walk, stand, sit for extend periods, and sustain positions and postures, without difficulty. (Tr. at 266.) Dr. Dan von Hessler also opined that Plaintiff could climb, stoop, balance, and bend with difficulty. (Id.) ALJ Davenport found the State Agency assessment, along with the reports of Dr. Hudson and Dr. Dan von Hessler, adequately informed his RFC determinations. (Tr. at 24.)

During his assessment, ALJ Davenport determined that Plaintiff's treating physician, Dr. Frank Kuitems, should not be given controlling weight. (Tr. at 24.) According to Dr. Kuitems, Plaintiff could never bend, crawl or climb and could only occasionally squat and reach. Dr. Kuitems determined that Plaintiff should be restricted from unprotected heights, moving machinery, temperature extremes, and vibration. (Id.) However, Dr. Kuitems believed that Plaintiff could now occasionally lift and carry ten to twenty pounds and did not have any restrictions from chemicals, dust and fumes, humidity, dampness, or excessive noise. (Id.) ALJ Davenport determined that Dr. Kuitems' opinions were not fully supported by the evidence of record. ALJ Davenport found that Dr. Kuitems misstated Dr. Hudson's

placement of Plaintiff on permanent disability in May of 2002; Dr. Hudson last examined Plaintiff in April and June of 2000 and found him capable of returning to work with limitations. (Id.) Further, ALJ Davenport determined that Dr. Kuitems' assessment that Plaintiff's limitation would have applied in 1999 was incorrect. Relying on Dr. Kuitems' clinical records, ALJ Davenport concluded that Dr. Kuitems advised Plaintiff to continue on "current light duty" work status in May of 2001. (Tr. at 23.) In addition, Dr. Kuitems' assessment of Plaintiff's continued sitting ability[2] was not supported by Dr. Dan von Hessler's examination and Plaintiff's daily activities. Plaintiff's driving ability refuted Dr. Kuitems' contention that Plaintiff was unable to sit for extend periods of times and operate foot controls. (Tr. at 23, 46-47.) The ALJ determined that Plaintiff performed other daily activities, including walking his dogs throughout the day for exercise, doing dishes and laundry, carrying laundry, and mowing his lawn on a riding lawnmower. (Tr. at 23, 47-51.) The ALJ provided sufficient justification for rejecting Dr. Kuitems' assessments. Substantial evidence supports ALJ Davenport's finding that Plaintiff could conduct light exertional work with a sit/stand option.

III.    **ALJ Davenport properly weighed Plaintiff's credibility in assessing his subjective complaints of disabling pain.**

Plaintiff generally contends that the ALJ did not follow the Eleventh Circuit's pain standard. Plaintiff asserts that the ALJ did not provide adequate reasons for discrediting Plaintiff's pain testimony. Defendant avers that the ALJ properly considered the Plaintiff's credibility and his determinations are supported by the record. Defendant asserts that

---

[2] Dr. Kuitems found that Plaintiff could only sit one-fourth of an hour without interruption with a cumulative total of one hour per eight hour day and could only stand for one-fourth of an hour without interruption, with a cumulative total of two hours per eight hour day. (Tr. at 22.)

11

Plaintiff's argument is merely a request to re-weigh subjective allegations in his favor." (Doc. No. 12, p. 12.)

In order to establish disability based on testimony of pain and other symptoms, a plaintiff must show: (1) evidence of underlying medical condition; and (2) either (a) objective medical evidence confirming severity of alleged pain or (b) that objectively determined medical condition could reasonably be expected to give rise to claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). An ALJ must "articulate explicit and adequate reasons for discrediting a Plaintiff's testimony regarding subjective complaints of disabling pain and other symptoms. Foote, 67 F.3d at 1561-62 (11th Cir. 1995). "Although [courts in] this circuit [do] not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote, 67 F.3d at 1562). A determination of an individual's credibility does not require "particular phrases or formulations," but a "broad rejection" is inappropriate if the court is unable "to conclude that the ALJ considered the [individual's] condition as a whole." Id. at 1210-1211 (citations omitted).

Based on the medical evidence of record, the ALJ found that Plaintiff's "allegations of disabling pain" were unsupported by his daily activities and his non-compliance with medical treatment. (Tr. at 24.) As previously discussed, ALJ Davenport found that Plaintiff engaged in a wide variety of daily activities that contradicted his allegations of disabling pain. (Tr. at 23-24.) Further, in making his credibility determination, the ALJ again noted that Plaintiff exacerbated his pain by smoking and drinking. (Tr. at 24.) Doctors repeatedly advised Plaintiff to stop these activities. (Tr. at 158, 159, 249, 251, 253, 255, 257.) At the hearing, Plaintiff testified that his doctors told him that smoking and drinking would kill him.

12

(Tr. at 53.) However, Plaintiff stated that he has not tried to quit smoking and continues to drink in defiance of physician's instructions. (Tr. at 53-54.) Dr. Kuitems' report in 2002 states that Plaintiff continued to smoke at least one pack of cigarettes and drank 3-5 ounces of vodka per day. (Tr. at 160.) ALJ Davenport properly considered Plaintiff's subjective complaints, as well as the factors at the source of his complaints. Based on Plaintiff's activities and testimony, the ALJ provided sufficient reasons for discrediting Plaintiff's complaints concerning disabling pain. Accordingly, ALJ Davenport applied the proper legal standard and his decision is supported by substantial evidence.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 29th day of November, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

13

AO 72A
(Rev. 8/82)